MARIE C. LOWE, Respondent, v. DANIEL J. LEARY and Others, Respondents, Impleaded with FREDERICK GELLER, as Executor, etc., of MARY C. LEARY, Deceased, Appellant.

First Department, July 11, 1918.

Real property — partition — failure to direct reference to ascertain creditors not parties having liens — discovery of unsatisfied mortgage after final judgment — evidence as to ownership of mortgage — resulting trust because of payment of purchase money prohibited by statute — presumption of payment of mortgage.

Where, in an action for partition, the provisions of the Code of Civil Procedure which require that before an interlocutory judgment for the sale of real property is entered in such an action, the court must either with or without application by a party, direct a reference to ascertain whether there is any creditor not a party who has a lien on the undivided share or interest of any party, were not followed, and after final judgment was rendered and a sale had, it was discovered that there was an unsatisfied mortgage upon the premises, there was no adjudication upon the rights of the parties with reference to said bond and mortgage.

On a reference to hear and determine all questions relating to said alleged mortgage and to determine the manner of distribution of the said fund, it appeared that the mortgage had been assigned to the testator's wife, and his son testified that a prior assignee of the mortgage, while he held

the same began an action of foreclosure, and that the intestate paid the mortgage and took the assignment thereof to his wife; that the bond and mortgage and the assignment were placed by the intestate in an envelope upon which he indorsed the statement that they were the property of his wife; that these papers remained in the intestate's safe until his death and thereafter until they were delivered to the intestate's wife, who kept them for some time. The son also testified that he kept his mother's account as administratrix and knows that the said bond and mortgage were not paid nor any interest thereon during that period. The mother's executor testified that he received the assignments of the mortgage some time after the death of the intestate's wife, from her son and requested him and the plaintiff in the partition action to make a search for the original bond and mortgage, and they reported that they could not find them.

*Held*, that under the circumstances, the order of the referee that the intestate never intended to give the bond and mortgage to his wife but that he took the assignment in her name to prevent a merger, and that there is an inference that the principal and interest thereon were paid, should be modified and the referee directed to pay the money into court to be held until a certain time, unless in the meantime proper evidence be given to enable the holder of the bond and mortgage to receive the same, and that upon the expiration of said period the said sum with interest be paid over to the persons to whom the proceeds of the sale were distributed under the final judgment.

Granting that the intestate took title to the bond and mortgage in the name of his wife to prevent a merger, the title became vested in her, with the intention that it should remain a valid and subsisting lien upon the premises. There is no evidence of any other intent, nor does the inference of the referee arise from the facts disclosed.

The mere disappearance or loss of a bond and mortgage does not give rise to a presumption of payment.

Under the circumstances no presumption arises in favor of either party.

The executor of the intestate's wife failing to produce the bond and mortgage or to satisfactorily account for its non-production, has not shown himself to be entitled to the funds.

As there is no presumption of payment, twenty years from the date of the payment of the last interest not having elapsed, there is no presumption that the debt is satisfied.

APPEAL by the defendant, Frederick Geller, as executor, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 8th day of December, 1917, confirming the report of a referee appointed to determine the ownership of a fund of $8,000 held by him subject to the order of this court.

*George S. Mittendorf* of counsel [*Geller, Rolston & Horan*, attorneys], for the appellant.

*Thomas F. Gilroy, Jr.*, for the guardian *ad litem* of infant defendants, respondents.

PAGE, J.:

James D. Leary died intestate, seized of the premises in question and a large amount of other real estate, most of which consisted of vacant and unproductive lots. One-third of the rents, issues and profits was not sufficient to provide for the suitable maintenance of his widow. Therefore, the children each conveyed to their mother a life estate in the property, she to provide for the maintenance and support of two infant children of a deceased brother. The widow reconveyed the interest theretofore conveyed to her by the plaintiff, a daughter of the deceased, who instituted an action for partition. The widow defaulted in pleading. Answers were interposed by Daniel J. Leary and his wife, and by the guardian *ad litem* for the infant defendants. An order of reference was entered referring the matter to William C. Arnold to ascertain and report the rights, shares and interests of the several parties in the property to be partitioned, whether the property is so circumstanced that actual partition thereof can be made or whether a sale is necessary, and also to ascertain and report whether there is any creditor not a party who has a lien on the undivided share or interest of any party. This latter provision was stricken from the order by an order of the court entered July 18, 1913.

Mary C. Leary, the widow, on or about the 17th day of January, 1914, executed and filed a consent to the sale of the premises and also a consent to accept a gross sum in full settlement and discharge of her right of dower in the real property and of her right as life tenant in an undivided one-half thereof. Mary C. Leary died August 3, 1914, leaving a last will and testament, in which Frederick Geller was appointed her executor and he duly qualified. A motion was thereafter made to substitute Frederick Geller as a party defendant in place of Mary C. Leary. This motion was opposed by Geller on the ground that Mary C. Leary's interest

in the property was limited to her dower right and the life estate in one-half thereof, and that her interest terminated by her death. On this showing the motion was denied.

The referee took the testimony and reported to the court, and thereupon a judgment was entered directing the sale of the property. In this judgment it was provided that a reference to inquire as to creditors, pursuant to section 1561 of the Code of Civil Procedure, be dispensed with. On the report of the referee final judgment was entered on the 24th day of August, 1916, directing the sale of the premises. It appears from this judgment that affidavits were filed with reference to a mortgage of $3,235 unsatisfied of record, and the judgment provided that the referee should retain out of the proceeds of the sale the sum of $8,000 to cover principal and interest of said mortgage, and directed that the mortgage be discharged and canceled of record, and that the remaining sum be distributed as therein provided, and that upon the report of a referee this judgment be so amended at its foot as to direct the disposition of the said sum of $8,000 so retained by the referee herein.

In the case at bar, as appears from the pleadings, Mary C. Leary was made a party defendant expressly on the theory that her interest in the property was that of a doweress and life tenant. There was no general allegation in the complaint that the various parties thereto had or claimed to have any lien or interest in the premises, but the specific interest of each was set forth. Furthermore, for some reason, the provisions of the Code (§ 1561) were not followed which require that before an interlocutory judgment for the sale of real property is rendered in an action for partition, the court must, either with or without application by a party, direct a reference to ascertain whether there is any creditor not 'a party who has a lien on the undivided share or interest of any party. There being no provision requiring the referee to inquire as to liens upon the premises, the final judgment was entered and a sale had, and then it was discovered that there was an unsatisfied mortgage upon the premises. There was, therefore, no adjudication upon the rights of the parties with reference to this bond and mortgage.

Thereafter, on motion of the guardian *ad litem* of the

infant defendants, it was referred to William C. Arnold as referee to hear and determine all questions relating to the said alleged mortgage and determine the manner of distribution of the said fund, and it was ordered that Frederick Geller, as executor of Mary C. Leary, or any party herein claiming the said alleged mortgage to have been a valid and subsisting lien or claiming to have any interest in the fund so reserved and held by the referee, file with the referee and serve on all parties a verified statement of the said claim. Pursuant to this direction, Frederick Geller filed a notice that he claimed the said fund as executor of Mary C. Leary. Objections to the claim were filed by the guardian *ad litem* and the referee took testimony in regard to the matter, from which it appeared that on or about the 30th day of December, 1899, Grahams Polley, the then owner of the premises, executed a bond and mortgage, a lien upon the premises, to secure the payment to Abram C. DeGraw of the sum of $3,235 with interest at five per cent, and that Abram C. DeGraw thereafter duly assigned the bond and mortgage to John F. Polley, who on or about the 23d day of January, 1902, executed and delivered an assignment thereof to Mary C. Leary, which assignment was duly recorded March 7, 1902.

From the testimony given by Daniel J. Leary it appeared that John F. Polley while he held the mortgage began an action to foreclose the same, and that James D. Leary paid the same and took the assignment thereof to his wife, Mary C. Leary. This bond and mortgage and the assignment were placed by James D. Leary in an envelope upon which he indorsed a short description of each document and the statement that they were the property of Mary C. Leary. These papers remained in James D. Leary's safe until the time of his death, and thereafter until 1906 or 1907, when Daniel J. Leary and his mother seem to have had some differences and he delivered the envelope containing the bond and mortgage and the two assignments, to his mother. His mother kept these documents in the right-hand drawer of her desk down to 1909, that is, Daniel J. Leary testifies that he saw the envelope which contained the documents on repeated occasions apparently in the same condition as it was when he delivered it to his mother, but he did not inspect the contents.

Daniel J. Leary also testifies that he kept his mother's account as administratrix of the estate of James D. Leary, and knows that the said bond and mortgage were not paid, nor any interest thereon, during that period.

Mr. Geller testifies that he received the assignments of mortgage some time after Mrs. Leary's death from George Leary, one of the sons; that he had requested George Leary and the plaintiff to make a search for the original bond and mortgage, but that they had notified him that they could not find them.

This is substantially all the testimony that was produced before the referee. The referee has reported:

(1) That in his opinion James D. Leary never intended to give the bond and mortgage to his wife, but that he took the assignment in her name to prevent a merger, relying on her to execute such papers and perform such acts as should be necessary to carry his wishes into effect; and

(2) That the circumstances surrounding the keeping and disappearance of the bond and mortgage gave rise to the inference that the principal and interest thereof were paid.

The difficulty with the referee's position is, granting that James D. Leary took title to the bond and mortgage in the name of his wife to prevent a merger, the title became vested in her, with the intention that it should remain a valid and subsisting lien upon the premises. There is no evidence of any other intent, nor does the inference of the referee arise from the facts disclosed. The mere disappearance or loss of a bond and mortgage does not give rise to a presumption of payment.

The cases relied upon by the referee and respondents are cases in which it was sought to foreclose a mortgage without the production of a bond, or as was the condition in *Bergen* v. *Urbahn* (83 N. Y. 49), where the bond was in possession of the mortgagor. The first of these cases are decided upon the theory that where a person is seeking to enforce a lien which is given to secure the payment of a debt, it is necessary for the plaintiff to establish the existence of the debt, and where a mortgage is recited to be given to secure the payment of a bond, that the bond must be produced or its absence satisfactorily accounted for.

Under the circumstances of this case, no presumption arises in favor of either party. The executor of Mary C. Leary, failing to produce the bond and mortgage or satisfactorily account for its non-production, has not shown himself to be entitled to the fund. As there is no presumption of payment, twenty years from the date of the payment of the last interest not having elapsed, there is no presumption that the debt is satisfied. In the condition that the case is now left, there are two possible contingencies:

(1) The bond and mortgage may have been lost or inadvertently destroyed; in which case, if proper evidence of the facts were placed before the court, the court could decree that the fund be paid to the executor of Mary C. Leary; or (2) it might be that Mary C. Leary had given the bond and mortgage to some third person; in which case there would be a valid assignment thereof, and such third person would be entitled to the fund in court.

Under these circumstances, in my opinion, the order should be modified and the referee be directed to pay the money into court to be held until the 8th day of March, 1922, unless in the meantime proper evidence be given to enable the holder of the bond and mortgage to receive the same, and that upon the expiration of said period the said sum, with any interest that may have accumulated thereon, shall be paid over to the persons to whom the proceeds of the sale were distributed under the final judgment and in proportion thereto. The findings of the referee inconsistent herewith are reversed.

DOWLING, LAUGHLIN, SMITH and MERRELL, JJ., concurred.

Order modified, as indicated in opinion. Order to be settled on notice.